# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19-1158　　　　　　　　　　　　　September Term, 2019

FILED ON: MARCH 27, 2020

EXHAUSTLESS, INC.,
    PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
    RESPONDENT

On Petition for Review of an Order
of the Federal Aviation Administration

Before: GRIFFITH and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

### JUDGMENT

This case was considered on the record from the Federal Aviation Administration (FAA) and the briefs of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons set out below, it is

**ORDERED** and **ADJUDGED** that the petition for review be **DENIED**.

Exhaustless, Inc., developed the Aviation 2.0 Operating Standard ("A2OS"), an algorithm-based product designed to reduce flight delays and congestion at commercial airports. *See Exhaustless, Inc. v. FAA*, 931 F.3d 1209, 1210-11 (D.C. Cir. 2019). In 2018, Exhaustless submitted a petition for rulemaking urging the FAA to adopt A2OS in place of existing congestion policies at the three largest airports serving New York City: John F. Kennedy International Airport (JFK), LaGuardia Airport, and Newark Liberty International Airport. *See* Petition for Rulemaking (May 21, 2018), J.A. 124-30.

In its petition, Exhaustless argued that A2OS would boost the role of market competition in airline regulation, a goal that Congress has identified as "in the public interest." *Id.* at 2, J.A. 125 (citing 49 U.S.C. § 40101(a)(6)). It devoted most of the petition to the alleged economic benefits of A2OS, including "significant new profit-potential for airlines and airports from reduced

1

delay-costs." *Id.* at 6, J.A. 129. It also explained that A2OS would reduce "health care costs" by curbing air pollution. *Id.* at 6 & n.8, J.A. 129. Finally, Exhaustless alluded to a "[s]ecurity risk of the takeoff queue of airplanes [that] stems from their easy targeting by assailants." *Id.* at 7, J.A. 130.*

The FAA denied the petition. *See* Order Denying Petition for Rulemaking (May 24, 2019), J.A. 166-67. First, it explained that, "[c]onsistent with [its] plenary authority over the efficient use of airspace," the FAA has imposed so-called "slot control[s]" at JFK and LaGuardia since 2008 and has regulated Newark under a different congestion-control scheme. *Id.* at 1, J.A. 166. Second, it cited 14 C.F.R. § 11.73(e), under which the FAA "may dismiss" any petition that "do[es] not address an immediate safety concern or cannot be addressed because of other priorities and resource constraints." Third, it stated that "[a]fter reviewing [Exhaustless's] petition and the current priorities for the FAA, the FAA has determined that [the] petition does not address an immediate safety concern and therefore does not meet the criteria to pursue rulemaking at this time." Order at 2, J.A. 167. The FAA informed Exhaustless that it would retain its petition in a database for future rulemaking consideration. *Id.*

Our review of an agency's decision to forgo rulemaking is "extremely limited" and "highly deferential." *WildEarth Guardians v. EPA*, 751 F.3d 649, 651 (D.C. Cir. 2014). Such a denial "is to be overturned only in the rarest and most compelling of circumstances," such as when the agency commits a "plain error[] of law." *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 5 (D.C. Cir. 1987) (internal quotation marks omitted). "We are particularly reluctant to compel rulemaking when the interests at stake are primarily economic," and "our cases reversing rulemaking denials have typically involved grave health and safety problems." *Midwest Indep. Transmission Sys. Operator, Inc. v. FERC*, 388 F.3d 903, 911 (D.C. Cir. 2004) (internal quotation marks and alterations omitted).

Exhaustless's challenge falls well short of this demanding standard. The FAA reasonably concluded that, given its existing congestion regulations, adopting A2OS would not address an "immediate safety concern." Order at 2, J.A. 167. Exhaustless's petition focuses not on safety, but on the economic benefits of competitive slot allocation and the FAA's purported legal obligation to adopt such a policy. *See* Petition at 3-6, J.A. 126-29. The FAA did not commit a "plain error[] of law" when it rejected Exhaustless's bid for control of congestion regulation at these three airports. *Am. Horse Prot. Ass'n*, 812 F.2d at 5.

Exhaustless's counterarguments are unconvincing. First, Exhaustless emphasizes its cryptic warning about a "[s]ecurity risk" to "takeoff queue[s]" posed by "assailants." Petition at 7, J.A. 130. The petition cites no evidence clarifying the nature, scope, or immediacy of this "risk."

---

* While its rulemaking petition was pending, Exhaustless challenged various interim orders through which the FAA controls congestion at these airports. We concluded that Exhaustless lacked Article III standing because it was not regulated by the existing system. *Exhaustless*, 931 F.3d at 1214. Although Exhaustless continues to object to these orders, *see* Exhaustless Br. 37-52, these arguments are not properly before us. As Exhaustless concedes, its petition for review in this case targets only the denial of its rulemaking request. *See id.* at 26, 37; *see also* Reply Br. at 19.

*Id.* Nevertheless, Exhaustless faults the FAA for failing to provide "factual support" for the notion that this remark did not raise a pressing safety issue. Exhaustless Br. 36. But the FAA need not mount a factual rebuttal to every sentence in a rulemaking petition, especially when the sentence in question raises only a vague, speculative concern.

Second, Exhaustless directs us to the petition's cursory discussion of air pollution. Petition at 6 & n.8, J.A. 129. Although the FAA has the "authority to address at least some *passenger* health issues," such as "inflight medical emergencies," *Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 748 (D.C. Cir. 2017) (emphasis added), ambient air quality is not the FAA's domain. In any event, Exhaustless makes no argument that air pollution, which presents a general threat to public health, qualifies as an "immediate safety concern," 14 C.F.R. § 11.73(e).

Finally, Exhaustless contends that the FAA failed to "explain or support why rulemaking should not take place." Exhaustless Br. 36. But the FAA accurately noted the petition's failure to raise an "immediate safety concern," and, on this record, that is an adequate reason for its denial. Order at 2, J.A. 167. The FAA's regulations notify prospective petitioners that it considers the "immediacy of the safety or security concerns . . . raise[d]" when evaluating rulemaking petitions, 14 C.F.R. § 11.73(a)(1), and that a petition that fails to raise such matters may be dismissed, *id.* § 11.73(e). By explaining that Exhaustless's petition failed to raise such concerns and thus fell short given the FAA's "current priorities," Order at 2, J.A. 167, the FAA said enough that its reasoning "may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). We do not require more, especially in this highly deferential context.

For the foregoing reasons, we deny the petition for review.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

                                              **FOR THE COURT:**
                                              Mark J. Langer, Clerk

BY:    /s/
           Daniel J. Reidy
           Deputy Clerk